## DuPRE v. SOUTHERN RY.

PLEADINGS—NEGLIGENCE—WILFULNESS.—Under the rules of pleading in this State, under the act of 1898, a plaintiff may allege an act as negligence and as wilful, and he may allege all facts going to make up the history of his alleged wrongs.

Before TOWNSEND, J., Greenwood, January, 1902. Reversed.

Action by Daniel C. DuPre against Southern Railway. From Circuit order on motion to make pleading more definite and certain, both parties appeal.

*Messrs. Sheppards & Grier* and *Caldwell & Parks,* for plaintiff, appellant, cite: 57 S. C., 234; 60 S. C., 48; 61 S. C., 190; Code of Proc., 181; 2 Wait's Prac., 478, 479; Pom. Rem., sec. 551; 50 S. C., 54.

*Mr. T. P. Cothran,* for defendant, appellant, cites: 16 Ency., 392; 54 S. C., 505; 61 S. C., 188; 42 S. C., 114; 55 S. C., 90; 60 S. C., 73.

April 20, 1903. The opinon of the Court was delivered by

MR. CHIEF JUSTICE POPE. The questions presented by this appeal arise from an order made by his Honor, Judge Townsend, on an application to him for an order to make the complaint more definite and certain. He refused, in his order, to allow any of the amendments sought by the defendant except one. The plaintiff appeals from his allowance as to the fifteenth article of the complaint. The defendant appeals from his whole order.

It will be necessary now to make the foregoing more definite by setting out the complaint, the order appealed from, the order made, and the exceptions to the order as made. The following is the complaint:

"Daniel C. DuPre, the plaintiff above named, complaining

of the Southern Railway Company, the defendant above named, alleges:

"I. That the said defendant is now, and was at the times hereinafter mentioned, a body corporate and politic under its charter and the laws of the State of Virginia, and liable to be sued in this Court.

"II. That the said defendant owns and controls property, carries on business, and has its agents in the said county of Greenwood, in the said State of South Carolina.

"III. That on the 28th day of February, 1901, or shortly after midnight of that day, the plaintiff, his wife, Mrs. A. B. DuPre, and his wife's mother, Mrs. L. H. Parrish, left the town of Greenwood, in the said State of South Carolina, to accompany the dead body of Miss Emma G. Parrish, sister of the plaintiff's wife, and daughter of the said Mrs. L. H. Parrish, to Versailes, in the State of Kentucky, where the said dead body was to be buried on the second day following —the plaintiff intending to accompany his said wife and her mother and the said dead body only as far as the city of Atlanta, in the State of Georgia, and there to assist his said wife and her mother to take passage on the defendant's train running toward the said destination, and to have the said dead body properly transferred to the defendant's train for transportation.

"IV. That, for the purposes above set forth, the plaintiff, just before midnight on the said 28th day of February, 1902, purchased from the Seaboard Air Line Railway Company, at the said town of Greenwood, four first class passenger tickets, one of them being for the transportation of his said wife, one of them being for the transportation of his said wife's mother, and one of them for the transportation of the said dead body, over the lines of the said Seaboard Air Line Railway Company from Greenwood aforesaid to Atlanta, in the State of Georgia, and thence over the lines and on the trains of the defendant to Lexington, in the State of Kentucky, that being the terminus of defendant's line toward Versailes aforesaid; the fourth ticket being for his

own transportation from Greenwood aforesaid to the city
of Atlanta aforesaid over the line of the said Seaboard Air
Line Railway.

"V. That the three tickets first above described consisted
each of a principal ticket good for transportation from
Greenwood aforesaid to Atlanta aforesaid, and a coupon
providing for additional transportation from Atlanta afore-
said to Lexington aforesaid, which coupon also provided
that the selling company, to wit: the Seaboard Air Line Rail-
way Company, would not be responsible for the connecting
line, the defendant company, but sold such ticket as the
agent of the latter.

"VI. All the said tickets were sold to the said plaintiff by
the regular ticket agent of the Seaboard Air Line Railway
Company, acting also as the agent for the defendant com-
pany.

"VII. That for the sale of the three tickets first above
described, to wit: the tickets embracing coupons for trans-
portation from Atlanta aforesaid to Lexington aforesaid
over the line of the defendant railway company, the said
Seaboard Air Line Railway Company and its agent at
Greenwood aforesaid, were the agents of the defendant, and
as such sold the plaintiff those three tickets, and received his
money in purchase thereof.

"VIII. That upon the arrival of the plaintiff, his said
wife, her said mother and the said dead body at the city of
Atlanta, about thirty minutes before the departure of the
defendant's next passenger train going to Lexington, in the
State of Kentucky, the plaintiff was informed by the agent
of the defendant there, that the tickets first above described
would not be accepted for the transportation of his said wife
and her mother over the defendant's line, because, such
agent stated, the same had not been properly stamped at
Greenwood aforesaid. Thereupon the plaintiff went to the
office of the defendant's passenger agent, and not finding
him there, went to the defendant's ticket agent, and offered
to pay all expenses of ascertaining, by telegraph, whether

the said tickets were genuine and duly issued at the place of their purchase above described, upon which offer that agent, without just cause, and in utter disregard of the plaintiff's rights, refused to act.

"IX. That thereafter, and about ten minutes before the departure of the train mentioned in paragraph VIII. of this complaint, the plaintiff went to the conductor of that train and made the offer described in said paragraph VIII., which was positively refused.

"X. That at the times mentioned in paragraphs VIII. and IX. of this complaint, the ticket for the transportation of the said dead body was in the possession of the defendant's agents, to wit: its baggage master on the train of the Seaboard Air Line Railway Company, who took it on the passage between the said town of Greenwood and the said city of Atlanta.

"XI. That the plaintiff was also informed by an agent of the defendant in the said city of Atlanta, at or about the times mentioned in paragraphs VIII. and IX. of this complaint, that the said dead body would not be transported by the defendant unless some person in charge of it accompanied it; yet, notwithstanding this announcement, and notwithstanding the facts and announcements set forth in paragraphs VIII. and IX. of this complaint, the said dead body was very soon thereafter carried away from that city and station by the defendant on one of its trains, without the knowledge of the plaintiff, who and his said wife and her said mother were left waiting in the city of Atlanta.

"XII. That by reason of the facts hereinabove set forth the plaintiff, his said wife and her mother, already grief-stricken by the death of their said near relative, became greatly distressed, fearing that some unhappy accident might happen to the said dead body (as, that it might, perhaps, be put off the train and left at some station short of the said station of Lexington, Kentucky), and the plaintiff, now almost exhausted and greatly worried by the misconduct of the defendant's agents, and their mistreatment of

himself, his wife and his wife's mother, was forced to ac-
company the two last two named persons from the said city
of Atlanta to the said station of Versailes, in the State of
Kentucky, and for that purpose, the agents of the defendant
having refused to accept the tickets of the plaintiff's said
wife and his said mother-in-law, paid the defendant, for the
second time, for the transportation of those two persons
from the city of Atlanta to the city of Lexington about the
sum of $24, and, for the transportation of himself between
the last two named places, the sum of about $12, paying thus
under compulsion arising from the misconduct of the de-
fendant's agents and servants, the aggregate sum of $36,
which he ought not to have been forced to pay out.

"XIII. That in order to rest and recuperate as far as pos-
sible from the worry, excitement and anxiety caused by the
occurrences herein above set forth, and to secure comfort,
convenience and rest for his wife and her mother, and
for himself also, the plaintiff took for them and himself pass-
age in a sleeping car or parlor car, on the passenger train of
the defendant from the said city of Atlanta to the said city
of Lexington departing next after the occurrences above
described—for which places in the said sleeping or parlor
car he paid the sum of $7.50 additional to the regular rail-
road fare mentioned in paragraph XII. of this complaint.

"XIV. That when the plaintiff entered the said sleeping
car on the defendant's said train from the said city of At-
lanta to the said city of Lexington, above described, the same
was heated to a high degree of temperature, the weather
being quite cold; but some hours later, during the night, the
servants and agents of the defendant, carelessly, negligently,
and without regard to the comfort, health and rights of the
plaintiff, detached the said cars from the rest, or at least
from other portions of the said train, and from connection
with the engine which supplied heat to the said car, and
attached to it a freight engine without heating pipes, for a
space of four or five hours; and, although there was a heat-
ing stove in the said car, negligently failed to use it for

heating the said car, whereby the said car rapidly became cold, which caused the plaintiff to contract a severe cold, which cold gradually grew worse, and finally developed into a serious case of pneumonia, which endangered his life, caused him great and protracted bodily suffering and mental anguish, and forced him to pay out large sums of money for medical attention, for appliances requisite in such sickness, and also to lose much valuable time from his business.

"XV. That by reason of the carelessness, negligence and wilful misconduct of the servants and agents of the defendant herein set forth and described, the plaintiff has been damaged in the sum of $1,999.99. Wherefore, the plaintiff demands judgment against the defendant for the sum of $1,999.99, and for the cost of disbursements of this action."

On the 20th January, 1902, the defendant gave notice of a motion before Judge Townsend for the following relief, as indicated by several grounds, as follows:

"1. For an order striking out paragraphs III., IV., V., VI., VII., VIII., IX., X., XI., of the complaint as irrelevant matter; for the same reason striking out all of paragraph XII. of the complaint except the statement that the plaintiff purchased from the defendant a ticket entitling him to transportation from Atlanta, Georgia, to Lexington, Kentucky, for the sum of $12; for the same reason striking out all of paragraph XIII. of the complaint except the statement that the plaintiff took for himself passage in a sleeping or parlor car on the passenger train of the defendant from the city of Atlanta to Lexington, Kentucky, for which he paid the sum of $2.50.

"2. For an order striking out paragraph XV. of the complaint upon the ground that it contains inconsistent allegations, negligence and wilful tort.

"3. For an order requiring the plaintiff to elect which cause of action he will proceed upon, ordinary negligence or wilful tort.

"4. For an order requiring the plaintiff to make his complaint more definite and certain by alleging the acts consti-

9—66

tuting wilful tort, in the event he elects to stand upon that cause of asction."

The Circuit Judge passed the following order:

"This is a motion to strike out parts of the complaint and to make the same more definite and certain in some respects, and to compel plaintiff to elect which cause of action he will stand upon.

"I refuse the motion except that the plaintiff must make his complaint more definite and certain by alleging what acts are negligent and what acts are wilful, as one act cannot be alleged as negligent and also as wilful. For instance, the plaintiff states his entire cause of action in the 15th paragraph of the complaint as due to carelessness, negligence and wilful misconduct of the agents and servants of the defendant, without stating which acts are negligent and which are wilful. The same act cannot be alleged as negligent and also wilful, because they are opposite terms in their meaning; yet wilful acts and also negligent acts may be alleged in the same complaint, if they are separate and distinct acts contributing to the injury complained of. All of which is ordered and adjudged."

From this order, as before remarked, both sides appeal.

The plaintiff urged the following grounds:

"First. Because his Honor erred, in that he required the plaintiff to make his complaint more definite and certain by alleging what acts are negligent and what acts are wilful. (a) The plaintiff has a right to allege that a specific act is both negligent and wilful, and shall be entitled to submit his whole case to the jury, under the instruction of the Court. (b) The plaintiff could not be expected to know what motive induced the agents of the defendant to commit the particular acts, and he should be entitled to state the facts and circumstances surrounding the particular act, and have the jury determine whether the act complained of was the result of negligence or wilful tort. (c). A wilful act may also be a negligent act. (d) The complaint states the facts, the con-

clusions to be drawn therefrom are within the peculiar province of the jury."

We will now pass upon exceptions of plaintiff. It seems to us that the Circuit Judge for the moment overlooked the broad terms embodied in the act of the General Assembly of this State found in the 22d vol. of Statutes at Large of this State, at pages 693 and 694. Before this act was passed, several decisions had been rendered by this Court which required parties to state definitely the cause of action as to damages, so that the defendant might see exactly what he was required to answer. Since the act (1898) we have before recited, that is no longer the rule in this State. The title of the act in question shows that it is "to *regulate the practice* in the Courts of this State in actions *ex delicto* for damages." By the terms in the body of the act, a man who sues for examplary may recover his actual damages, and no party is "required to make any separate statement in the complaint in such action nor shall any party be required to elect whether he shall go to trial for actual or other damages, but shall be entitled to submit *his whole case* to the jury under the instruction of the Court." Now the words of the act, "under the instructions of the Court," were necessary in order that the act might be constitutional, for our Constitution, adopted in 1895, in a mandatory manner requires that Circuit Judges shall declare the law to the jury. It does seem from the first section of the act from which we have just quoted, that a party plaintiff has the right to go to trial for actual or other damages without any power in the Circuit Judge to require him to elect whether he will go to trial for actual or *other* damages. The second section of the act of 1898 leaves no room for doubt, for it provides that *"in all cases* whenever two or more acts of negligence *or other* wrongs are set forth in the complaint *as causing or contributing to the injury* for which suit is brought, the party suing shall not be required to state *such acts separately,* nor shall such party be required to elect upon which he will be required to go to trial, but shall be entitled to submit his

whole case to the jury under the instructions of the Court and to recover such damages as he has sustained, whether such damages arose from one or another, or all of such acts and wrongs alleged in the complaint. And all acts or parts of acts inconsistent with this act are repealed" (italics ours). From this statement of the act of 1898 it seems to us the Circuit Judge was in error when he required the plaintiff to reconstruct his complaint by stating what acts are negligent and what are wilful. And it is so adjudged.

Now we will consider the defendant's exceptions, which are as follows:

"1. His Honor erred in refusing defendant's motion to strike out, as irrelevant, paragraphs III., IV. V., VI., VII., VIII., IX., X., XI., all of parapgraph XII., except the statements that the plaintiff purchased from the defendant a ticket entitling him to transportation from Atlanta, Ga., to Lexington, Ky., for the sum of $12, and all of paragraph XIII., except the statement that the plaintiff took for himself passage in a sleeping or parlor car on the passenger train of the defendant from the city of Atlanta to Lexington, Ky., for which he paid the sum of $2.50; whereas, he should have held that the only cause of action alleged in the complaint in favor of the plaintiff against the defendant is that while in Atlanta he purchased from the defendant a ticket entitling him to transportation from Atlanta to Lexington, Ky.; that he also purchased accommodation upon a sleeping or parlor car of defendant's train; that on account of insufficient heating of said sleeping or parlor car he contracted pneumonia, from which he suffered as alleged. Nothing else alleged in the complaint is pertinent or relevant to this issue. 1. Paragraph III. alleges the circumstances under which plaintiff went to Atlanta, which are totally irrelevant to his alleged cause of action. 2. Paragraph IV. alleges the purchase of three tickets for plaintiff's party from Greenwood to Lexington, Ky., over defendant's line from Atlanta to Lexington, and one ticket for himself over another line than defendant's from Greenwood to Atlanta. The purchase of

three tickets was for others, and the purchase of the ticket for himself was over another line than the defendant's, and the allegations are totally irrelevant to his alleged cause of action.    3. Paragraph IV. refers only to the purchase of tickets for the others of plaintiff's party, and is totally irrelevant to his alleged cause of action.    4. Paragraph VI. is subject to the same objection as in 3.    5. Paragraph VII. is subject to the same objection as in 3.    6. Paragraph VIII. contains allegations of a possible breach of contract between the defendant and the persons for whom the through tickets were purchased, for which they alone would be entitled to sue. It has no relevancy to the plaintiff's alleged cause of action. 7. Paragraph IX. is subject to the same objection as in 6. 8. Paragraph X. refers to the ticket purchased for the transportation of the corpse, and has no relevancy to the plaintiff's alleged cause of action.    9. Paragraph XI. is objectionable as containing probative instead of substantive facts. It is also objectionable for the reason that at the time plaintiff sustained no contractual relation with defendant, and its disposition of the corpse could make no cause of action in favor of the plaintiff.    It is also irrelevant to the plaintiff's alleged cause of action.    10. Paragraph XII. contains simply the inducement for the plaintiff accompanying the party to Lexington, and is irrelevant to his alleged cause of action.    The failure of defendant to honor the tickets of plaintiff's companions, even if it could be made the ground of complaint by him, was not the proximate, natural or direct cause of his trip.    The allegation that plaintiff purchased a ticket for himself to Lexington is not objected to.    Plaintiff's mental anguish unaccompanied by physical injury would constitute no cause of action.    11. Paragraph XIII. contains only the inducement for the plaintiff taking a sleeper, which is not relevant to his cause of action., What others of the party did can add nothing to his cause of action.

"II. His Honor erred in not striking out paragraph XV. upon the ground that it contains inconsistent allegations, negligence and wilful tort.

"III. His Honor erred in not requiring plaintiff to elect which cause of action he would proceed to trial upon, that for negligence or that for wilful tort; the plaintiff having alleged in his complaint that the several acts of the defendant therein set forth were both negligently and wilfully done. A plaintiff may allege that one act was done wilfully and that another act was done negligently, and perhaps claim damages for both in his complaint, but he cannot allege that the same act or acts was or were done both negligently and wilfully. He should be required to elect."

The multiplication of words will not tend to make clearer, we fear, the revolution in pleadings in actions *ex delicto* for damages by the act of 1898, already cited, than what we have already said in passing upon the plaintiff's single ground of appeal. To our minds, anything that is connected with the events which constitute the plaintiff's story of his wrongs at the hands of the Southern Railway Company may be included in the allegations of fact set out in the plaintiff's complaint. Whatever corrective force in the law there may be resides in the Circuit Judge in his charge upon the law to the jury; it does not reside in the Circuit Judge as a person to correct the allegations of fact in the complaint, where those allegations of fact pertain to actual damages or examplary damages sustained by the plaintiff. But apart from this view of the force of the act of 1898, we must say that we regard the allegations of fact set out in the complaint as nothing but a connected history of plaintiff's wrongs. We must overrule defendant's exceptions.

It is the judgment of this Court, that the order of the Circuit Judge, so far as the plaintiff's grounds of appeal are concerned, is reversed; and further, that such order of the Circuit Judge, so far as the defendant's grounds of appeal are concerned, is affirmed.

M. Justice Jones *concurs in the result.*